CHRISTOPHER JOSEPH DESALVA (SBN 172209)
LAW OFFICE OF CHRISTOPHER JOSEPH DESALVA
45-902 Oasis Street, Suite D, Indio, CA 92201
Telephone: (760) 447-0031 | Email: desalvalaw@gmail.com

Attorney for Petitioner
LUZ MARIA MEDRANO BARCO

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| LUZ MARIA MEDRANO BARCO,<br><br>Petitioner,<br><br>v.<br><br>FERETI SEMAIA, Warden (or Facility Administrator), Adelanto ICE Processing Center; THOMAS GILES, Field Office Director, U.S. Immigration and Customs Enforcement, Los Angeles Field Office; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; and TODD BLANCHE, Attorney General of the United States,<br><br>Respondents. | Case No. ____________________<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; REQUEST FOR ORDER TO SHOW CAUSE WITHIN THREE (3) DAYS; DECLARATORY RELIEF**<br><br>**IMMEDIATE RELEASE REQUESTED**<br><br>Petitioner is detained at the Adelanto ICE Processing Center, Adelanto, California.<br><br>Next EOIR hearing: Master Calendar, November 6, 2026, 1:00 p.m. (video), Adelanto Immigration Court. |

## I. INTRODUCTION

1. Petitioner Luz Maria Medrano Barco is a 23-year-old native and citizen of Guatemala who entered the United States as a 16-year-old child in January 2019. A Florida juvenile court adjudicated her dependent after finding that she had been abused, abandoned, and neglected, and that she had no viable caretaker in her home country. On the strength of those findings, United States Citizenship and Immigration Services approved her petition for Special Immigrant Juvenile classification on April 6, 2021, granted her deferred action on May 11, 2022, and issued her employment authorization valid through May 9, 2026. On July 25, 2025, an Immigration Judge administratively closed her removal proceedings over the Department's express opposition, finding that she "has a direct route to lawful permanent resident status."

2. Every one of those determinations was made by the Government itself. The Government now detains her.

3. Ms. Medrano Barco has been held in immigration custody since November 27, 2025 — three hundred fourteen (314) days as of the filing of this Petition. In all that time, no Immigration Judge, and no other neutral decision-maker of any kind, has ever made a custody determination in her case. She has never had a bond hearing. The single hearing that was set, on May 29, 2026, was continued because her pro bono counsel did not appear; the Immigration Judge offered to proceed with her unrepresented, and she declined because she wanted her lawyer present. No hearing was ever rescheduled.

4. The sole basis for her detention was a state criminal case arising from a domestic-violence incident in which she sought to protect her infant son. On August 27, 2026, the State of Florida abandoned that case entirely: all three charges were disposed of by nolle prosequi. Her counsel filed the disposition order with the Immigration Court on September 21, 2026. Six weeks later, she remains detained, and no one has reviewed her custody in light of the dismissal.

5. Her next appearance is a master calendar hearing on November 6, 2026 — a scheduling conference, not a custody hearing. Her United States citizen son, born September 3, 2024, has now spent nearly half his life with his mother in a detention center two thousand five hundred miles away.

6. This Petition raises a single, narrow question that does not depend on which detention statute the Government invokes: whether the Fifth Amendment permits the civil detention of a person for 314 days without any custody hearing at all. It does not. Petitioner asks this Court to order her immediate release or, in the alternative, to order a bond hearing before a neutral Immigration Judge within seven days at which the Government bears the burden of justifying her continued detention by clear and convincing evidence.

## II. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 2241, Article I, Section 9, Clause 2 of the United States Constitution (the Suspension Clause), and 28 U.S.C. § 1331. Petitioner is in custody under color of federal authority in violation of the Constitution and laws of the United States. 28 U.S.C. § 2241(c)(3).

8. District courts retain habeas jurisdiction over challenges to the lawfulness and duration of immigration detention. Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001); Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017); Demore v. Kim, 538 U.S. 510, 516-17 (2003). The limitations in 8 U.S.C. § 1226(e) do not bar habeas review of constitutional claims or questions of law. Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011); Martinez v. Clark, 124 F.4th 775, 782-83 (9th Cir. 2024).

9. Nor do 8 U.S.C. § 1252(b)(9) and § 1252(g) bar this Petition. Petitioner does not challenge any decision to commence proceedings, adjudicate her case, or execute a removal order. She challenges only the duration of her detention and the total absence of any custody process. Jennings v. Rodriguez, 583 U.S. 281 (2018). Section 1252(f)(1) is likewise no obstacle: this is an individual petition, not a request for classwide injunctive relief. Garland v. Aleman Gonzalez, 596 U.S. 543 (2022).

10. Venue is proper in this District and in the Eastern Division. Petitioner is detained at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, California 92301, in San Bernardino County. Her immediate custodian is located within this District. Rumsfeld v. Padilla,

542 U.S. 426, 442-43 (2004); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 494-95 (1973); 28 U.S.C. § 1391(e).

## III. PARTIES

11. Petitioner LUZ MARIA MEDRANO BARCO is a native and citizen of Guatemala, born December 23, 2002, assigned Alien Registration Number A201-591-484. She is detained at the Adelanto ICE Processing Center and is not free to leave.

12. Respondent FERETI SEMAIA is the Warden (or Facility Administrator) of the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, California 92301. He is Petitioner's immediate custodian and is sued in his official capacity.

13. Respondent THOMAS GILES is the Field Office Director of the U.S. Immigration and Customs Enforcement Los Angeles Field Office. He has legal authority over Petitioner's detention and is sued in his official capacity.

14. Respondent DAVID VENTURELLA is the Acting Director of U.S. Immigration and Customs Enforcement, 500 12th Street SW, Washington, DC 20536. He is sued in his official capacity.

15. Respondent MARKWAYNE MULLIN is the Secretary of the U.S. Department of Homeland Security, 2707 Martin Luther King Jr. Avenue SE, Washington, DC 20528. He is sued in his official capacity.

16. Respondent TODD BLANCHE is the Attorney General of the United States, 950 Pennsylvania Avenue NW, Washington, DC 20530. He is sued in his official capacity.

## IV. EXHAUSTION IS NOT REQUIRED

17. There is nothing to exhaust. Exhaustion presupposes an administrative decision capable of review. No Immigration Judge has ever ruled on Petitioner's custody, so there is no bond order, and no adverse determination from which an appeal to the Board of Immigration Appeals could be taken. The very injury Petitioner complains of is the absence of any decision.

18. In any event, the exhaustion requirement for immigration detention habeas is prudential, not jurisdictional, and is therefore waivable. Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007). Waiver is appropriate where administrative remedies are inadequate, where irreparable injury may occur without immediate review, or where exhaustion would be futile. Laing v. Ashcroft, 370 F.3d 994, 1000-01 (9th Cir. 2004). All three conditions are satisfied here: each additional day of unreviewed detention is an irreparable deprivation of liberty, and a court of appeals within the agency cannot supply a custody hearing that has never been held.

19. A court of this District recently waived exhaustion on materially similar facts in a case arising from this same facility, applying the Puga factors and citing the irreparable harm of continued detention and the likelihood of delay before the Board. Herman v. Department of Homeland Security, No. 5:26-cv-01995-MBK (C.D. Cal. June 12, 2026).

## V. FACTUAL BACKGROUND

### A. Entry as an Abandoned Child and Florida Dependency Proceedings

20. Petitioner entered the United States at or near El Paso, Texas, on or about January 11, 2019, when she was sixteen years old. She travelled with her father and the two presented themselves to immigration authorities. She was placed in a shelter in Texas for approximately five days and then released to relatives in Miami, Florida.

21. Her father remained in the United States for roughly nine months and then returned to Guatemala, leaving her without any adult responsible for her care. Her older siblings were unwilling to assume responsibility for her, and the State of Florida took her into protective custody.

22. On May 11, 2020, the Circuit Court of the Eleventh Judicial Circuit, Miami-Dade County, Juvenile Division, adjudicated Petitioner dependent under Chapter 39 of the Florida Statutes. On December 9, 2020, that court entered a Best Interest Order (Case No. 20-15113 D001, Hon. Vivianne Del Rio) finding that Petitioner had been abused, abandoned, and neglected within the meaning of Fla. Stat. §§ 39.01(1), (2), and (50), that her father "failed to supply the child with adequate food, clothing, shelter, or health care," that reunification with

either parent was not viable, and that "Returning Luz to Guatemala would be contrary to her best interest and welfare because Luz has no viable caretaker in Guatemala." The same court entered an Order Extending Jurisdiction to permit her Special Immigrant Juvenile petition to be adjudicated. (Ex. A.)

23. Petitioner remained a dependent of the Florida Department of Children and Families, in foster care and then extended foster care, until she aged out.

**B. The Government's Own Favorable Determinations**

24. On November 7, 2019, the Department of Homeland Security issued a Notice to Appear (Form I-862). The Notice to Appear checks the box stating that Petitioner is "an alien present in the United States who has not been admitted or paroled," and charges her as removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). It does not allege that she is an arriving alien, and no expedited removal order was ever issued or vacated. (Ex. B.)

25. On December 22, 2020, Petitioner filed a Form I-360 petition for Special Immigrant Juvenile classification. USCIS approved it on April 6, 2021 (Receipt No. MSC2190586003, classification SL6). (Ex. C.)

26. On May 11, 2022, USCIS granted Petitioner deferred action based on her approved Special Immigrant Juvenile classification. USCIS issued her employment authorization, most recently a category (c)(14) Employment Authorization Document valid from May 10, 2024 through May 9, 2026, and she was issued a Social Security number on May 13, 2024. (Ex. D.)

27. Petitioner has never received any notice from USCIS terminating her deferred action.

28. On July 25, 2025, Immigration Judge Dalin Holyoak of the Miami Immigration Court administratively closed Petitioner's removal proceedings. The Department of Homeland Security opposed. The Immigration Judge closed the case anyway, writing: "Respondent's request for SIJS has been approved by USCIS, and she is awaiting adjustment. DHS opposed. Administrative closure is in the interests of judicial economy as Respondent has a direct route to lawful permanent resident status." (Ex. E.)

29. Between her entry in January 2019 and her detention in November 2025 — a period of nearly seven years — Petitioner was never subject to an order of supervision, an alternatives-to-detention program, electronic monitoring, or any ICE reporting requirement. She was never required to attend an ICE check-in, and she never missed one, because none was ever imposed. She never departed the United States. She had no arrests of any kind.

**C. The October 2025 Incident and Its Dismissal**

30. On October 9, 2025, Petitioner was at her home in Hollywood, Florida, with Daniel Steven Cole, a United States citizen and the father of her son. An argument escalated. Mr. Cole came out of a bedroom with a baseball bat and began striking and breaking the light fixtures in the bathroom. He then positioned himself near their infant son. Believing he was about to harm the child, Petitioner moved toward him. Mr. Cole retreated into a bedroom, locked the door, and called the police. When officers arrived, Petitioner was arrested.

31. In the patrol car, Petitioner slipped out of her handcuffs. Officers removed her from the vehicle and put her on the ground. Her hair fell into her mouth, and when she moved to clear it an officer accused her of spitting at him. She denied it then and denies it now. The officers were equipped with body-worn cameras.

32. Petitioner was charged in the Circuit Court of the Seventeenth Judicial Circuit, Broward County, Florida, Case No. 25011790CF10A, with three offenses: Battery on a Law Enforcement Officer; Battery (touch or strike); and Resisting or Obstructing an Officer Without Violence.

33. On August 27, 2026, the Circuit Court entered a Disposition Order reflecting nolle prosequi as to all three charges. The State abandoned the case in its entirety. Petitioner was never convicted of, and never pleaded to, any offense. She has no other criminal history of any kind. (Ex. F.)

34. On September 21, 2026, Petitioner's immigration counsel filed the Disposition Order with the Adelanto Immigration Court. (Ex. G.) No custody review of any kind followed.

**D. Three Hundred Fourteen Days of Detention Without a Hearing**

35. On November 27, 2025, upon her release from the Broward County Jail, Petitioner was taken into the custody of U.S. Immigration and Customs Enforcement. Officers were waiting for her inside the jail at the property-release window. She was not shown an arrest warrant and was not given a copy of any document. At the ICE office she was asked to sign a single sheet of paper, was asked whether she wished to see a judge, and answered that she did. She was given no copy of what she signed.

36. Petitioner was briefly held in Baker County, Florida, and was then transferred across the country to the Adelanto ICE Processing Center in San Bernardino County, California, where she has remained. She has been in immigration detention for 314 consecutive days as of the filing of this Petition, and 363 days have passed since her initial state arrest.

37. On May 29, 2026, a hearing was convened before Immigration Judge Steven Marcus at which bond was to be addressed. Petitioner's pro bono counsel did not appear. The Immigration Judge asked Petitioner whether she wished to proceed without a lawyer. She declined, stating that she needed her attorney present. The Immigration Judge told her to request bond when she was ready and that a new date would be given. No bond hearing was ever rescheduled or held.

38. Petitioner did not renew the request because counsel advised her that bond would be denied while the criminal charges remained pending. Those charges were dismissed on August 27, 2026. No custody hearing has been held since.

39. To date, no Immigration Judge has ever made any custody determination in Petitioner's case. No neutral decision-maker has ever weighed her request for release, considered the dismissal of the criminal charges, considered her approved Special Immigrant Juvenile classification, or considered the Immigration Judge's July 2025 finding that she has a direct route to lawful permanent resident status.

40. On August 24, 2026, Petitioner filed a signed Form I-485 application to adjust status, together with a Form EOIR-26A fee waiver request, with the Adelanto Immigration Court. (Ex. H.) That application remains pending.

41. On October 2, 2026, the Adelanto Immigration Court issued a Notice of Hearing setting a master calendar hearing for November 6, 2026 at 1:00 p.m., by video. (Ex. I.) A master calendar hearing is a scheduling proceeding. It is not a bond hearing, and it will not result in any custody determination.

42. Petitioner has a place to live and a family waiting for her. If released, she would return to 512 N. Highland Drive, Hollywood, Florida 33021, where her two-year-old United States citizen son, Daniel Steven Cole, Jr., born September 3, 2024, lives with his father. She speaks with her son by video once a week. Her brother, Milton Gamaliel Medrano Barco, is a lawful permanent resident living approximately an hour away, and her brother José Medrano is also in the United States; both would assist her in attending every immigration hearing.

## VI. LEGAL FRAMEWORK

### A. Civil Detention Without an Individualized Hearing Has Constitutional Limits

43. Freedom from physical restraint "has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). Civil detention is permissible only where it bears a reasonable relation to a legitimate governmental purpose and is accompanied by adequate procedural safeguards. Zadvydas v. Davis, 533 U.S. 678, 690 (2001); Jackson v. Indiana, 406 U.S. 715, 738 (1972).

44. In Jennings v. Rodriguez, 583 U.S. 281 (2018), the Supreme Court held that 8 U.S.C. §§ 1225(b), 1226(a) and 1226(c) do not by their terms require periodic bond hearings. The Court expressly declined to reach the constitutional question and remanded it. Jennings rejected a statutory claim; it preserved the constitutional one. This Petition presses the claim Jennings left open.

45. The Ninth Circuit has long recognized that detention lasting six months or more is "prolonged" and raises serious constitutional concerns, and that prolonged detention requires an individualized hearing before a neutral arbiter at which the Government bears the burden of justification. Diouf v. Napolitano, 634 F.3d 1081, 1091-92 & n.13 (9th Cir. 2011); Singh v. Holder, 638 F.3d 1196, 1203-04 (9th Cir. 2011).

46. Where prolonged detention is challenged as applied, district courts in this Circuit assess reasonableness under a multi-factor test: (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays caused by the Government; and (6) the likelihood that the proceedings will result in a final order of removal. Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117-18 (W.D. Wash. 2019); Kydyrali v. Wolf, 499 F. Supp. 3d 768, 772-74 (S.D. Cal. 2020).

47. Other courts, including in this District, analyze the same question under Mathews v. Eldridge, 424 U.S. 319, 335 (1976), weighing the private interest, the risk of erroneous deprivation under the procedures used and the value of additional safeguards, and the Government's interest. Vargas-Sacul v. Johnson, No. 5:26-cv-02494-ACCV (C.D. Cal. Sept. 15, 2026). Petitioner prevails under either framework, and pleads both.

48. Critically, courts have granted relief on this theory while assuming, without deciding, that the petitioner was an applicant for admission subject to mandatory detention under § 1225(b)(2)(A). Lastin v. Warden, Imperial Regional Detention Facility, No. 26-cv-974-RSH-DDL (S.D. Cal. Mar. 2, 2026) (fifteen months; bond hearing ordered within seven days); Wang v. Albarran, No. 1:26-cv-00009 (D. N. Mar. I. June 1, 2026) (over eight months; relief granted although the petitioner had never requested a bond hearing). The constitutional question therefore does not turn on the statutory classification dispute described below.

**B. The Applicable Detention Statute Is 8 U.S.C. § 1226(a)**

49. The Ninth Circuit has squarely held that "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)," and are therefore entitled to a bond hearing. Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1165 (9th Cir. 2026). That decision is published and binding in this Circuit, and it rejects Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025).

50. Petitioner falls within that holding on the face of the Government's own charging document. The Notice to Appear checks the box for an "alien present in the United States who

has not been admitted or paroled" and charges INA § 212(a)(6)(A)(i). She was not apprehended at a port of entry or at the border; she was taken from a county jail in Florida nearly seven years after her entry. She is a § 1226(a) detainee.

51. Petitioner acknowledges candidly that on October 1, 2026 the Supreme Court granted certiorari in Rhoney v. Barbosa da Cunha, No. 26-104, on the question whether § 1225(b)(2)(A) mandates the detention of persons present without having been admitted. Rodriguez Vazquez remains binding law in this Circuit unless and until the Supreme Court holds otherwise. More importantly, Count One does not depend on the answer: a 314-day detention with no hearing at all is unconstitutional under either statute.

**C. The Laken Riley Act Does Not Make This Detention Mandatory**

52. To the extent the Government contends that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E), as amended by the Laken Riley Act, Pub. L. No. 119-1, it is mistaken. That provision reaches a person who is inadmissible under § 1182(a)(6)(A), (6)(C), or (7) and who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts" that constitute the essential elements of burglary, theft, larceny, shoplifting, assault of a law enforcement officer, or any crime that results in death or serious bodily injury to another person.

53. Congress specified where those terms get their content. Under 8 U.S.C. § 1226(c)(2), the terms "burglary," "theft," "larceny," "shoplifting," "assault of a law enforcement officer," and "serious bodily injury" have the meanings given to them "in the jurisdiction in which the acts occurred." The acts here occurred in Florida. Florida law therefore supplies the definition.

54. Florida does not define battery as assault. An assault is "an intentional, unlawful threat by word or act to do violence to the person of another," coupled with an apparent ability to do so and an act creating "a well-founded fear in such other person that such violence is imminent." Fla. Stat. § 784.011(1). It requires no touching. A battery, by contrast, occurs when a person "[a]ctually and intentionally touches or strikes another person against the will of the

other" or "[i]ntentionally causes bodily harm to another person." Fla. Stat. § 784.03(1)(a). It requires no threat and no fear.

55. The Florida Legislature kept the two offenses separate in the very statute governing offenses against law enforcement officers. Fla. Stat. § 784.07(2) reclassifies them in different subparagraphs carrying different penalties: subparagraph (a) governs assault upon an officer and reclassifies it from a second-degree to a first-degree misdemeanor; subparagraph (b) governs battery upon an officer and reclassifies it from a first-degree misdemeanor to a third-degree felony.

56. Petitioner was charged under the battery provision, not the assault provision. The charge recorded by the Broward County Circuit Court is "Battery on Law Enforc Officer." Battery upon a law enforcement officer under Fla. Stat. § 784.07(2)(b) is not "assault of a law enforcement officer" as Florida defines that term, and § 1226(c)(2) directs that Florida's definition controls.

57. A court of this District applied precisely this method of analysis under § 1226(c)(2) to reject a Laken Riley Act designation, holding that the enumerated offenses take their meaning from the law of the arresting jurisdiction and that an offense with different elements is not the enumerated offense merely because the Government characterizes it that way. Rugama Perez v. Semaia, No. 5:26-cv-05138-DFM (C.D. Cal. Sept. 29, 2026) (McCormick, M.J.), Dkt. 14 (unpublished; cited as persuasive authority, a copy of which is lodged herewith).

58. Petitioner's two remaining charges fare no better. Battery under Fla. Stat. § 784.03 and resisting an officer without violence under Fla. Stat. § 843.02 are not among the enumerated offenses. No death occurred, and no serious bodily injury to any person is alleged.

59. Finally, the Government has never served Petitioner with a Form I-286 Notice of Custody Determination or any other document identifying the statutory basis for her detention. Petitioner reserves the right to address any statutory designation the Government first discloses in its answer.

**D. Petitioner's Special Immigrant Juvenile Status Bears on Both Questions**

60. Congress provided that a special immigrant juvenile "shall be deemed, for purposes of subsection (a), to have been paroled into the United States." INA § 245(h)(1), 8 U.S.C. § 1255(h)(1); see also 8 C.F.R. § 245.1(e)(3)(i). Congress further provided that, in adjudicating such an application, the inadmissibility grounds at § 212(a)(4), (5)(A), (6)(A), (6)(C), (6)(D), (7)(A), and (9)(B) "shall not apply." INA § 245(h)(2)(A), 8 U.S.C. § 1255(h)(2)(A).

61. The ground charged against Petitioner — § 212(a)(6)(A)(i) — is on that list. The same ground is the predicate that 8 U.S.C. § 1226(c)(1)(E)(i) requires before the Laken Riley Act can apply at all. Petitioner submits that Congress did not intend the Act's mandatory-detention provision to rest on an inadmissibility ground it has simultaneously declared inapplicable to her.

62. Petitioner acknowledges that this argument is not settled, that there is little authority on it in this Circuit, and that at least one court of appeals has taken a contrary view of the scope of § 245(h)(1). She therefore pleads it as a supporting consideration bearing on the reasonableness of her detention and on the construction of § 1226(c)(1)(E), and not as an independent jurisdictional bar. At a minimum, an approved Special Immigrant Juvenile classification and a pending adjustment application make a final order of removal substantially less likely — the sixth Banda factor — and bear directly on both flight risk and the Government's interest in continued custody. Cf. Alfaro Herrera v. Baltazar, No. 1:25-cv-04014-CNS (D. Colo. Jan. 13, 2026).

## VII. CLAIMS FOR RELIEF

### COUNT ONE

### Fifth Amendment — Prolonged Detention Without Any Custody Hearing

(As Applied; Independent of the Governing Detention Statute)

63. Petitioner realleges and incorporates paragraphs 1 through 62.

64. Petitioner has been detained for 314 days. Her detention is prolonged by any measure. Diouf, 634 F.3d at 1091-92. It is more than twice the five-month period that a court of

this District recently described as "not unusually prolonged for civil detention purposes." Vargas-Sacul, No. 5:26-cv-02494-ACCV.

65. Applying the Banda factors: (1) the length of detention to date, 314 days, weighs decisively in Petitioner's favor; (2) the likely duration of future detention weighs in her favor, because her next setting is a master calendar hearing at which no custody determination will be made, her adjustment application has not been adjudicated, and any decision is subject to administrative and judicial review; (3) the conditions of her detention are those of a secure facility and are penal in character; (4) no delay in the proceedings is attributable to Petitioner — the one bond setting was lost because her pro bono counsel failed to appear, not through any act of hers; (5) the Government has allowed six weeks to pass since the dismissal of all criminal charges without conducting any custody review; and (6) a final order of removal is unlikely, because Petitioner holds an approved Special Immigrant Juvenile classification, has a pending adjustment application, and has already obtained an Immigration Judge's finding that she has a direct route to lawful permanent resident status.

66. Applying Mathews: Petitioner's private interest in liberty is at its zenith after nearly a year of confinement and is magnified by her separation from a two-year-old United States citizen child. The risk of erroneous deprivation is not merely high but total — the existing procedures have produced no decision at all, by anyone, in 314 days. The value of the additional safeguard sought is correspondingly great: a single hearing before a neutral Immigration Judge. The Government's countervailing interest is slight, resting on charges the State of Florida abandoned in their entirety and on no other criminal history whatsoever.

67. The Ninth Circuit has criticized custody procedures that "do not provide for a decision by a neutral arbiter such as an immigration judge" and that place the burden on the detainee rather than the Government. Diouf, 634 F.3d at 1091-92. Here there has been no arbiter at all, neutral or otherwise.

68. Petitioner's failure to renew a bond request does not forfeit this claim. Relief has been granted to a petitioner who never requested a bond hearing in the first place. Wang v. Albarran, No. 1:26-cv-00009 (D. N. Mar. I. June 1, 2026). Moreover, detention itself has

impaired her ability to obtain and direct counsel, which is what caused the May 29, 2026 setting to be lost. Cf. Herman v. DHS, No. 5:26-cv-01995-MBK (C.D. Cal. June 12, 2026).

69. Petitioner's continued detention therefore violates the Due Process Clause of the Fifth Amendment and renders her custody unlawful under 28 U.S.C. § 2241(c)(3).

**COUNT TWO**

**8 U.S.C. § 1226(a) — Detention Without the Bond Hearing the Statute Requires**

70. Petitioner realleges and incorporates paragraphs 1 through 62.

71. Petitioner is detained under 8 U.S.C. § 1226(a), not § 1225(b)(2)(A). Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1165 (9th Cir. 2026). The Government's own Notice to Appear identifies her as a person present without admission or parole and charges § 212(a)(6)(A)(i).

72. Section 1226(a) authorizes release on bond or conditional parole and entitles a detainee to an individualized custody determination before an Immigration Judge. 8 C.F.R. §§ 236.1(d), 1003.19, 1236.1(d). Petitioner has never received one.

73. To the extent the Government relies on 8 U.S.C. § 1226(c)(1)(E), that provision does not apply for the reasons stated in paragraphs 52 through 59. Petitioner pleads each ground independently so that relief may be granted on the narrowest one.

74. Detention without the custody determination the statute requires is custody "in violation of the . . . laws . . . of the United States." 28 U.S.C. § 2241(c)(3).

**COUNT THREE**

**Fifth Amendment — Deprivation of Deferred Action Without Notice or Process**

75. Petitioner realleges and incorporates paragraphs 1 through 62.

76. USCIS granted Petitioner deferred action on May 11, 2022 and issued employment authorization valid through May 9, 2026. That grant conferred a cognizable liberty and property interest on which Petitioner relied for years: she worked lawfully, obtained a Social Security number, and built a life around the Government's assurance that it did not intend to remove her.

77. Petitioner has never been served with a notice of termination of deferred action, or with any other document informing her that the Government had withdrawn that determination, or affording her any opportunity to respond before she was incarcerated.

78. An agency must follow its own procedures. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954). Deprivation of a settled interest without notice or any opportunity to be heard violates the Due Process Clause. Mathews v. Eldridge, 424 U.S. 319 (1976). To the extent the Government effectively terminated Petitioner's deferred action without process, that action was also arbitrary, capricious, and not in accordance with law. 5 U.S.C. § 706(2)(A).

## VIII. THE STATUTORY ROUTE HAS PROVED INADEQUATE ON THIS RECORD

79. Petitioner does not contend that custody hearings are categorically unavailable or futile. She contends that on this record the ordinary route has already been tried and has failed to produce anything at all.

80. The record is as follows. One custody setting was convened, on May 29, 2026. It produced no decision because Petitioner's pro bono counsel did not appear and Petitioner, offered the choice of proceeding alone, asked for her lawyer. No new date was ever set. The criminal charges that counsel believed would defeat a bond request were dismissed in full on August 27, 2026, and the dismissal was filed with the Immigration Court on September 21, 2026. In the six weeks since, no custody review of any kind has occurred. The next setting, on November 6, 2026, is a master calendar hearing at which no custody determination will be made. On that trajectory Petitioner will pass a full year in detention without ever having been heard on her liberty.

81. That is precisely the inadequacy that justifies the writ. A remedy that exists on paper but has produced no decision in 314 days is not an adequate remedy.

82. Petitioner therefore asks first for immediate release. She was never subject to any condition of supervision before her detention, so there are no prior conditions to restore. If, however, the Court concludes that the violation is better cured by supplying the process that has

been missing, Petitioner asks in the alternative that the Court order a bond hearing before a neutral Immigration Judge within seven days, at which the Government bears the burden of establishing by clear and convincing evidence that she is a flight risk or a danger to the community. Singh v. Holder, 638 F.3d 1196, 1203-04 (9th Cir. 2011); see Mondaca-Vega v. Lynch, 808 F.3d 413, 422 (9th Cir. 2015) (en banc) (clear and convincing evidence requires "an abiding conviction that the truth of [the] factual contentions [is] highly probable").

83. Petitioner does not ask this Court to review, reopen, or disturb any removal order or any question of removability. Those matters belong to the Immigration Court and, on review, to the court of appeals.

## IX. DECLARATORY RELIEF

84. An actual and justiciable controversy exists between Petitioner and Respondents concerning the lawfulness of her continued detention. Petitioner is entitled to a declaration of rights under 28 U.S.C. §§ 2201 and 2202.

## X. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1. ISSUE an Order to Show Cause, returnable within three (3) days, directing Respondents to show cause why the writ of habeas corpus should not be granted, 28 U.S.C. § 2243;

2. GRANT the writ of habeas corpus and ORDER Petitioner's immediate release from custody;

3. In the alternative, ORDER Respondents to provide Petitioner an individualized bond hearing before a neutral Immigration Judge within seven (7) days, at which the Government shall bear the burden of establishing by clear and convincing evidence that Petitioner is a flight risk or a danger to the community, and at which the Immigration Judge shall consider ability to pay and alternatives to detention, and ORDER her release if the Government fails to carry that burden;

4. DECLARE that Petitioner's continued detention without any individualized custody determination violates the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1226(a);

5. ENJOIN Respondents from transferring Petitioner outside the Central District of California during the pendency of these proceedings, except for the purpose of release, without at least two court days' prior notice to Petitioner, her counsel, and this Court;

6. ORDER Respondents to file a status report confirming compliance within three (3) days of any order of release;

7. AWARD Petitioner costs and reasonable attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, to be requested by a properly filed separate motion; and

8. GRANT such other and further relief as the Court deems just and proper.

Dated: October 8, 2026

Respectfully submitted,

Christopher J. DeSalva

CHRISTOPHER JOSEPH DESALVA
LAW OFFICE OF CHRISTOPHER JOSEPH DESALVA
Attorney for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I, CHRISTOPHER JOSEPH DESALVA, declare as follows:

1. I am an attorney licensed to practice law in the State of California, State Bar No. 172209, and I am counsel for Petitioner Luz Maria Medrano Barco in this matter.

2. Petitioner is detained at the Adelanto ICE Processing Center, Adelanto, California, and by reason of her confinement is unable to verify this Petition personally.

3. Pursuant to 28 U.S.C. § 2242, which permits an application for a writ of habeas corpus to be signed and verified by "someone acting in his behalf," I verify this Petition on Petitioner's behalf.

4. I have reviewed the foregoing Petition and the exhibits submitted in support of it. The factual allegations are based upon my review of Petitioner's immigration records, the documents attached as exhibits, and information provided by Petitioner and her family. I believe those allegations to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Indio, California, on October 8, 2026.

Christopher J. DeSalva

CHRISTOPHER JOSEPH DESALVA
Attorney for Petitioner

**CERTIFICATE OF SERVICE**

I, Dr. Victor M. Viruena, declare as follows:

I am over the age of eighteen and not a party to this action. My business address is 73-350 El Paseo Drive, Suite 204, Palm Desert, California 92260. I act on behalf of Christopher J. DeSalva, Esq., counsel for Petitioner.

On the date set forth below, I electronically filed the foregoing VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241, together with the exhibits submitted in support, with the Clerk of the Court using the Court's CM/ECF system. The CM/ECF system will send notification of such filing to all Respondents and all counsel of record, including the United States Attorney's Office for the Central District of California as counsel for the named Respondents. Service is complete upon electronic filing pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 5-3.2.1.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Palm Desert, California, on October 8, 2026.

Dr. Victor Viruena

DR. VICTOR M. VIRUENA
On behalf of Christopher J. DeSalva, Esq.